IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| PATRICIA LUND, individually and on behalf of all others similarly situated | | PLAINTIFF |
| v. | Case No._____ | |
| FORD MOTOR COMPANY | | DEFENDANT |

## CLASS ACTION COMPLAINT

Comes now the Plaintiff Patricia Lund, individually and on behalf of all others similarly situated, ("Plaintiffs" or the "Ms. Lund") by and through her attorneys, and for her Class Action Complaint, against FORD MOTOR COMPANY ("Defendant" or "FORD") states:

### INTRODUCTION

1. This Action seeks certification of a proposed class of Arkansans who currently or formerly owned or leased 2013-2019 Ford Escapes, 2015-2019 Ford Edges, 2017-2019 Lincoln MKCs, and 2017-2019 Lincoln MKZs (the "Class Vehicles").

2. The Class Vehicles had uniformly defective FORD 1.5L, 1.6L, or 2.0L Ecoboost engines ("Ecoboost Engines") that FORD and its related subsidiaries designed, manufactured, distributed, sold and leased. The defective FORD Ecobost Engines caused engine coolant to leak into the engine's cylinders (the "Engine Defect"). The Engine Defect can cause the Vehicles' Ecoboost Engines and its components to overheat, totally fail and catch fire.

### PARTIES, JURISDICTION, AND VENUE

3. Plaintiff, Patricia Lund is a citizen of the State of Arkansas. Plaintiff resides in

Fort Smith, Arkansas. Plaintiff owned a used 2016 Ford Escape with a 2.0L EcoBoost Engine, VIN 1FMCU9G95GUB74249 (the "Vehicle").

4. The Class are citizens of Arkansas.

5. FORD MOTOR COMPANY, is a Delaware Company with headquarters in Dearborn, Michigan. FORD may be served with process in this Action through its registered agent: CT Corporation System, 124 West Capitol Ave., Ste. 1900, Little Rock, AR 72201-3717.

6. A substantial part of the event or omission giving rise to the cause of action occurred in Sebastian County, Arkansas. Plaintiff resided in Sebastian County at the time of the event or omission giving rise to the cause of action.

7. This Court has subject-matter jurisdiction over this Action under 28 U.S.C. § 1332(d)(2) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because one or more members of the Class are citizens of a State different from FORD.

8. This Court has personal jurisdiction over FORD under the due process clause of the Fourteenth Amendment to the United States Constitution.

9. Venue is proper in this Judicial District under 28 U.S.C. § 1391(a)(2) because a substantial part of the acts and transactions complained of herein occurred in this District and under 28 U.S.C. § 1391(b)(3). Venue is proper in this Division under 28 U.S.C. § 83(a).

## FACTUAL ALLEGATIONS

10. FORD designed, manufactured, distributed and sold the Class Vehicles.

11. In 2009, FORD began producing the Ecoboost Engine, which is gasoline-fueled, turbocharged, and direct-injection ("GTDI").

12. FORD marketed the Ecoboost Engines as a low-emission, fuel-efficient alternative to hybrid and electric vehicles. The Ecoboost Engines are substantially the same in the Class Vehicles, with the same relevant components and materials.

13. On information and belief, the Engine Defect is the result of the design of the Ecoboost Engine's block and cylinder head, and an inadequate seal on the cylinder head.

14. The Engine Defect causes engine coolant to remain in the engine instead of circulating through the engine to the radiator.

15. The Engine Defect causes engine coolant to pool in the engine, which damages the engine's components by its presence. The Engine Defect also reduces the amount of available coolant, which can cause the engine to overheat.

16. The Engine Defect can cause the Class Vehicles' engine and its parts to crack, warp, corrode, lose oil viscosity, wear down prematurely, and catch on fire.

17. Since at least 2010, FORD was aware of the Engine Defect.

18. According to records on file with the National Highway Traffic Safety Administration (NHTSA) on August 18, 2017, a consumer reported the Ford Edge became engulfed in flames within minutes while he was stopped on the side of the highway.

19. According to records on file with the NHTSA, on June 24, 2020, another consumer reported his vehicle "went dead while in motion going 75 miles per hour" he and his five-year old daughter were stranded on the side of a highway for four hours. After his vehicle was towed to a dealership, he was told the "entire engine needs to be replaced" and this was a "common problem on the Ecoboost 2.0 [L] engine."

20. Other consumers have made similar complaints, which are publicly available on

the NHTSA's website.

21. FORD receives warranty claims from dealerships and dedicated quality assurance engineers.

22. FORD has failed to offer consumers with an effective solution.

23. FORD provided Plaintiff and the Class with an express, written, warranty, covering the Vehicles.

24. FORD provides a new vehicle limited warranty for three years or 36,000 miles, whichever comes first. FORD's new vehicle limited warranty expressly states that FORD will "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" so long as the Vehicle is operated and maintained and taken to a FORD dealership for repair within the warranty period (the "New Vehicle Warranty").

25. FORD provides powertrain warranty coverage which applies to the engine, all internal lubricated parts, cylinder block, cylinder heads, electrical fuel pump, powertrain control module, engine mounts, flywheel, injection pump, manifold (exhaust and intake), manifold bolts, oil pan, oil pump, seals and gaskets, engine thermostat, engine, thermostat housing, timing chain cover, timing chain (gears or belt), turbocharger/supercharger unit, valve covers, water pump, transmission, front-wheel driver, rear-wheel driver, and four-wheel/all-wheel drive. FORD's powertrain warranty coverage applies for 5-years or up to 60,000 miles, whichever comes first (the "Powertrain Warranty").

26. The terms of these warranties are dictated by FORD.

27. FORD also sells replacement engines and components and provides a written warranty for these replacement parts. For all parts sold on or after October 1, 2013, parts found to be defective in factory-supplied material or workmanship will be repaired, replaced, or exchanged within 24 months of part purchase, regardless of the number of miles driven. (the "Parts Warranty").

28. On March 27, 2017, FORD issued a Recall under NHTSA Campaign Number 17V20900 that applied to "certain 2014 Escape, 2014-2015 Fiesta ST, 2013-2014 Fusion and 2013-2015 Transit Connect vehicles equipped with 1.6L GTDI engines." (the "Recall"). The Recall's notice stated that because of an insufficient coolant level, the "engine cylinder head may overheat, crack, and leak oil."

29. The Recall was set to begin on January 5, 2018, which provided for the installation of a coolant level sensor. The Recall did not mention the risk of engine fire or failures.

30. The Recall was inadequate because it did not address the true source of the problem or fix the problem. It also did not encompass the full range of Vehicles affected by the defect. It did not apply to the 1.5L and 2.0L Ecoboost Engines with the same engine block design, which are made from the same materials, and likewise suffer from the Engine Defect. Likewise, it did not apply to all of the Vehicle models and model years with the defective Ecoboost Engines.

31. In 2018, FORD supplemented its initial Recall. It acknowledged the possibility of engine fires, but did not include the 1.5L or 2.0L Ecoboost Engines, did not apply to the full class of Vehicles equipped with defective Ecoboost Engines, and did not address the underlying

defect. Rather, it identified the problem as "localized overheating of engine cylinders."

32. The supplement to the Recall did not provide for replacement engines. It did not provide for reimbursement of consumers' replated costs to have the Vehicles' coolant replenished, to replace totally failed engines, to reimburse consumers for vehicles lost to engine fires, and it does not compensate consumers for the costs and expenses associated with the time during which they are unable to use their vehicle as a result of the recurrent Engine Defect.

33. The Recall, including the supplement, is insufficient to address the underlying Engine Defect, and does not come close to adequately and wholly compensate Plaintiff and the Class members for the injuries caused by the Engine Defect and FORD's related acts and omissions.

34. Through a comprehensive advertising campaign, FORD marketed the Vehicles as quality and safe.

35. Despite its knowledge of the Engine Defect, FORD failed to disclose and actively concealed the defect, that the Vehicles were not fit for their intended purposes, the pervasiveness of the Engine Defect even when Class members directly inquired about it, forced the Class members to bear the cost of temporary solutions, while failing to offer a comprehensive and effective Recall.

36. On October 21, 2016, Ms. Lund purchased her Vehicle from Fort City Motors in Fort Smith, Arkansas. The Vehicle had approximately 14,532 miles on the odometer.

37. Safety and reliability were important to Ms. Lund when she purchased the Vehicle.

38. Ms. Lund purchased her Vehicle primarily for personal, family or household use.

39. If FORD disclosed its knowledge of the Engine Defect to Ms. Lund, she would not have purchased the Vehicle or paid less for her Vehicle.

40. Ms. Lund has attempted to drive her Vehicle in a manner that was both foreseeable and in which it was intended to be used.

41. Ms. Lund provided pre-suit notice to FORD.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this Action individually and on behalf of a class of similarly situated persons under Federal Rule of Civil Procedure 23.

43. Plaintiff sues on her own behalf and for the following Class:

All citizens of the State of Arkansas who purchased or leased a 2013-2019 Ford Escapes, 2013-2019 Ford Fusions, 2015-2018 Ford Edges, 2017-2019 Lincoln MKCs, and 2017-2019 Lincoln MKZs excluding FORD, its parents, directors and officers of FORD, directors of officers of its parents and governmental entities, the judicial officers who this case is assigned and their staff, and those persons who have suffered personal injures as a result of the facts alleged herein (the "Class").

44. The members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of members of the Class is unknown, enough members are putative Class members to meet the requirements of Rule 23(a)(1). The Class members identities are identifiable through records kept by FORD and the Arkansas Department of Finance and Administration, Motor Vehicle Division. It is administratively feasible to determine whether a particular individual is a member of the Class.

45. The precise number and identity of the Class's members can be determined by the books and records of Defendant.

46. Plaintiff is a member of the Class.

47. Plaintiff's claims are typical of the claims of all Class members. Plaintiff like the Class Members, purchased or leased a Class Vehicle designed, manufactured, marketed, distributed, warranted, sold/leased, and serviced by FORD. Plaintiff, like all Class members, have been damaged by FORD's misconduct because she purchased/leased a Vehicle she otherwise would not have purchased or leased at the price she paid, or incurred or will incur costs of repairs relating to and caused by the Engine Defect. Furthermore, the factual basis of FORD's misconduct was common to all Class members and represented a common thread of misconduct resulting in injury to all Class members.

48. No antagonism exists between the interests of the representative Plaintiff and the interest of other Class members, and the Plaintiff is fully prepared to pursue her case diligently on their behalf. Plaintiffs is otherwise a proper person to serve as Class Representative and is interested in the outcome of this litigation and understands the importance of adequately representing the Class. Further, Plaintiff will fairly and adequately protect the interests of the Class sought to be certified in this Action.

49. Plaintiff's counsel are experienced and are well qualified to conduct this litigation.

50. There exist numerous common questions of law or fact within the meaning of Rule 23 and these common questions predominate over any questions affecting only individual Class members within the meaning of Rule 23(a)(2). These common questions include, but may not be limited to:

    a. Do the Class Vehicles have defective engines?

    b. Did FORD know or should have known about the Engine Defect,

and if so, for how long?

c. Is the defect in the Class Vehicles a material fact that reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle?

d. Did FORD have a duty to disclose the defective nature of the Class Vehicles to Plaintiff and the Class members?

e. Did FORD omit and failed to disclose material facts about the Class Vehicles?

f. Did FORD conceal the true defective nature of the Class Vehicles included Plaintiff and the Class members to act to their detriment by purchasing or leasing Class Vehicles?

g. Did FORD represent, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they actually did not have?

h. Did FORD represent, through its words and conduct, represent that the Class Vehicles were of a particular standard, quality, or grade, when they were of another?

i. Did FORD advertise the Vehicles with the intent not to sell/lease them as advertised?

j. Were the Class Vehicles. Unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability?

k. Are Plaintiff and the other Class members entitled to a declaratory judgment stating that the Ecoboost Engines in Class members are defective and/or not merchantable?

l. Are Plaintiff and the other Class members entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction?

m. Should FORD be declared financially responsible for notifying all Class members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the Engine Defect in the Class Vehicles?

   n.  Should FORD be obligated to inform Class members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective Ecoboost Engines?

51. FORD has acted on grounds that apply generally to Plaintiffs and all Class members, so declaratory and injunctive relief is necessary and appropriate for the Class as a whole, consistent with Rule 23(b)(2) of the Federal Rules of Civil Procedure.

52. The Class is sufficiently cohesive to meet the Requirement of Rule 23(b)(2).

53. The common pattern of conduct by FORD (and the common legal theories for redressing the misconduct) support the maintenance of this Action as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

54. Under Rule 23(b)(3), a class action is superior to the other available methods for the fair and efficient adjudication of the controversy because it is desirable to concentrate the litigation of the Class members' claims to one forum, since it will conserve party and judicial resources and facilitate the consistency of adjudication.

55. The damages suffered by individual Class members are relatively modest, and their interest in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for them to seek individual redress for the wrongs done to them, the class mechanism of Rule 23 is superior. Plaintiff knows of no difficulty encountered in the management of this Action that would preclude its maintenance as a class action.

### COUNT I: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§2301, *et seq.*

56. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if

fully set forth herein.

57. This Court has jurisdiction to decide claims brought under 15 U.S.C. §2301 under §§ 1332(a) and (d).

58. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

59. FORD is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)—(5).

60. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

61. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

62. In its Limited Warranty, FORD expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period.

63. FORD's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicle's implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

64. With respect to the Class members' purchases or leases of the Class Vehicles, the terms of FORD's written warranty and implied warranty became part of the basis of the bargain between FORD, on the one hand, and Plaintiff and each of the members of the proposed Class, on the other.

65. FORD breached the implied warranty of merchantability. Without limitation, the

Class Vehicles have engines that leak coolant, overheat, fail, and in some instances catch fire, as described above, and which thus render the Class Vehicles unmerchantable.

66. FORD breached its express Limited Warranty by refusing to repair the defective engines in the Class Vehicles.

67. FORD was given notice of the defect through thousands of consumer complaints and information about service repairs from its dealership. FORD has not remedied the breach.

68. FORD has refused to provide an adequate warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. Customers that have presented their Vehicles for warranty repair due to engine overheating, smoke emission, and engine failure have simply been provided either coolant sensors, replacement parts that do nothing to fix the Engine Defect, or replacement defective engines.

69. At the time of the sale or lease of each Class Vehicle, FORD knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Engine Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the members of the proposed Class resort to an informal dispute resolution procedure and/or afford FORD an opportunity to cure its breach of warranties is excused and thus deemed satisfied.

70. The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25. The amount in controversy in this Action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determine in this lawsuit.

71. As a direct and proximate result of FORD's breaches of its Limited Warranty and

the implied warranty of merchantability, Plaintiff and the members of the proposed Class have sustained damages in an amount to be determined at trial.

72. Plaintiff, individually and on behalf of all members of the proposed Class, seek all damages permitted by law, including the diminution in value of their Vehicles, in an amount to be proven at trial.

## COUNT II: BREACH OF IMPLIED WARRANTY

73. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

74. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code Ann. § 4-2-105.

75. FORD is and was at all relevant times a "seller," "merchant" and "lessor," of the Class Vehicles under Ark. Code Ann. §§ 4-2-103(1)(d), 4-2-104(1) and 4-2A-103(1)(p).

76. When it sold or leased its Class Vehicles, FORD extended an implied warranty to Class members that the Class Vehicles were merchantable and fit for the ordinary purpose for which they were sold or leased under Ark. Code Ann. §§ 4-2-314(2) and 4-2A-212(2).

77. Plaintiff and other Class members who purchased or leased a Class Vehicle are entitled to the benefit of their bargain: a Vehicle with a nondefective Ecoboost Engine that does not leak coolant and cause coolant to seep into the cylinders, resulting in the engine overheating, the cylinder head cracking, the engine misfiring, the engine totally failing, and/or the engine igniting.

78. The Engine Defect is latent and was present at the time of the sale/lease, and therefore the Vehicles were not merchantable at the time of the sale/lease.

79. If the Engine Defect that existed at the time of the sale/lease was known, the Class Vehicles would not have been sold or leased, or would not have been sold or leased at the same price for which Class members paid.

80. As a direct and proximate result of FORD's breach of the implied warranty of merchantability, Plaintiff and Class members have been damages in an amount to be proven at trial.

## COUNT III: BREACH OF EXPRESS WARRANTY

81. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

82. As set forth above, the written warranty provided to Plaintiff and the proposed Class specifically and expressly provides that FORD will "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factor-supplied materials or factory workmanship."

83. As described herein, the Class Vehicles were manufactured with defective material and such defect existed at the time the Vehicles left the manufacturing plant. Plaintiff and the members of the proposed Class submitted their Vehicle for warranty repairs as referenced herein. FORD failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the subject materials defect under the Vehicle's warranty as described herein.

84. FORD's acts in failing and/or refusing to repair the Engine Defect during the

warranty period so as to bring the Vehicles into conformity with the express warranty, deprived Plaintiff and members of the proposed Class of their rights guaranteed to them under the express warranty offered by FORD.

85. As a direct and proximate result of the willful failure of FORD to comply with its obligations under the express warranty, Plaintiff and members of the proposed Class have suffered actual and consequential damages. Such damages include, but are not limited to, the cost of repairing the Vehicles, the loss of the use and enjoyment of the subject Vehicle, and a diminution in the value of the Vehicle containing the Engine Defect identified herein.

## COUNT IV: UNJUST ENRICHMENT

86. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

87. In purchasing FORD's automobiles, Plaintiff and members of the Class paid certain sums for said automobiles, which include the Engine Defect, thereby conferring a benefit on FORD that is unjust and excessive given the nature of the Engine Defect.

88. FORD has knowingly received and retained these benefits.

89. It would be manifestly unjust for FORD to retain these benefits.

90. Plaintiff and member of the Class are entitled to an amount equal to the amount each of them enriched FORD and for which FORD has been unjustly enriched.

## DEMAND FOR JURY TRIAL

91. Under Rule 38(b) Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

respectfully requests the following relief:

A. Determine this action be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representatives, and Plaintiff's counsel as Class Counsel.

B. A declaration that the Ecoboost engines are defective.

C. A declaration that Ford is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles.

D. An Order enjoying FORD from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles.

E. An Order requiring Ford to permanently repair Class Vehicles, within a reasonable time period and at no cost to Class Members, so that they no longer possess the Engine Defect.

F. An award to Plaintiff and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial.

G. A declaration that Ford must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members.

H. An award of attorney's fees and costs under 15 U.S.C. § 2310(d)(1) and as otherwise allowed by law.

I. An award of pre-judgment and post-judgment interest, as provided by law.

J. Such other relief as may appropriate under the circumstances.

DATE: December 9, 2020                     Respectfully Submitted,

*[signature]*

MILLIGAN LAW OFFICES
Phillip J. Milligan (#92055)
Milligan Law Offices
500 So. 16th Street
P.O. Box 2347

Fort Smith, AR 72902-2347
(479) 783-2213– Telephone
(479) 783-4329– Facsimile
Email: milliganlaw@sbcglobal.net

Thomas P. Thrash (AR #80147)
Will Crowder (AR #03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: tomthrash@thrashlawfirmpa.com
Email: willcrowder@thrashlawfirmpa.com

*Attorneys for Plaintiffs*